# EXHIBIT C

# SHIPBUILDING CONTRACT

**BETWEEN:**
**NOBISKRUG GMBH**
**a company of ThyssenKrupp Marine Systems**
**as "Builder"**

**AND:**

**CHMM, LLC,**
**Trust Company Complex, Ajeltake Road, Ajeltake Island,**
**Majuro, Marshall Islands MI 196960**
**as "Purchaser"**

**for one**

---

**59.5 m MOTOR YACHT HULL NO: 779**

---

1. INTERPRETATION ....3
2. SUBJECT OF CONTRACT ....7
3. INSPECTION ....15
4. MODIFICATIONS ....18
5. TESTS AND TRIALS ....21
6. LIQUIDATED DAMAGES ....24
7. DELIVERY OF THE YACHT ....26
8. CONTRACT PRICE AND TERMS OF PAYMENT ....33
9. PROPERTY, PURCHASER SUPPLIED ITEMS AND IP-RIGHTS ....37
10. RISK AND INSURANCE ....39
11. WARRANTY ....41
12. BUILDER'S DEFAULT ....45
13. PURCHASER'S DEFAULT ....46
14. TAXES ....49
15. PATENTS ....50
16. LAW AND ARBITRATION ....51
17. LIMITATIONS UPON LIABILITY ....53
18. GENERAL PROVISIONS ....54

SCHEDULE 1 - SPECIFICATIONS ....58
SCHEDULE 2 - GENERAL ARRANGEMENT PLAN ....59
SCHEDULE 3 - BUILDER'S CONSTRUCTION SCHEDULE ....60
SCHEDULE 4 - DESIGN DRAWINGS SCHEDULE ....61
SCHEDULE 5 - ACTION LIST ....62
SCHEDULE 6 - FORM OF CHANGE ORDER ....63
SCHEDULE 7 - FORM OF PROTOCOL OF DELIVERY AND ACCEPTANCE ....64
SCHEDULE 8 - FORM OF BUILDER'S CERTIFICATE ....65
SCHEDULE 9 - FORM OF ADVANCE PAYMENT REFUND GUARANTEE ....66
SCHEDULE 10 – INTERIOR OUTFITTING DEMARCATION LIST ....67
SCHEDULE 11 – WEIGHT LIMITS LIST ....68

**THIS CONTRACT** is made this 19 day of April, 2006,

**BETWEEN:**

(1) **NOBISKRUG GMBH,** a company of ThyssenKrupp Marine Systems, organised and existing under the laws of the Federal Republic of Germany with its registered office at Kieler Strasse 53, 24768 Rendsburg (the "Builder"),

**AND:**

(2) **CHMM, LLC,** a company organised and existing under the laws of the Marshall Islands with its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MI 196960 (the "Purchaser").

**IT IS HEREBY AGREED AND STIPULATED** as follows:

## 1. INTERPRETATION

### 1.1 Index and headings to Clauses

The index to this Contract and the headings or titles to the Clauses hereof are inserted for ease of reference only and shall be disregarded in the construction and interpretation of this Contract.

### 1.2 Definitions

In this Contract, unless there is something inconsistent with the context:

**"Action List"** shall mean the list containing dates by which certain action is required from the Purchaser and which is appended hereto as Schedule 5.

**"Allowance"** means a provisional sum included in the Contract Price in respect of certain items described in Sub-Clause 8.1 (c) and in respect of which the parties shall



G/ MM

follow the procedure per Sub-Clause 2.10.

**"Base Rate"** means the prevailing 6 months EURIBOR (EURO Interbank Offered Rate) from time to time plus 2%.

**"Builder's Authorized Representative"** means for the time being Peter Güldensupp or such other person as the Builder may designate from time to time, in writing, to Purchaser.

**"Builder's Construction Schedule"** means the schedule appended hereto as Schedule 3.

**"Builder's Premises"** means the Builder's shipyard at Rendsburg in the Federal Republic of Germany.

**"Business Day"** means a day (other than Saturday) on which banks are generally open in New York and Frankfurt.

**"Change Order"** shall mean an order in the form appended hereto as Schedule 6 setting out, inter alia, the amendment or amendments to the Specifications, including the affect of such amendment or amendments to the Contract Price, the Scheduled Delivery Date and certain performance characteristics of the Yacht including speed, range, draft, noise levels, and tonnage, pursuant to Clause 4.

**"Classification"** means the rules and regulations of Lloyd's Register of Shipping in force on the day of signing this Contract for its + 100 A1 SSC Yacht (P), Mono, G6, + LMC, UMS (EP) classification designation.

**"Classification Society"** means Lloyd's Register of Shipping.

**"Class Notation"** means + 100 A1 SSC Yacht (P), Mono, G6, + LMC, UMS (EP)

**"Contract"** means this shipbuilding contract together with its Schedules.

**"Contract Price"** means the price stipulated in Sub-Clause 8.1.

**"Design Drawings Schedule"** means the schedule of the Exterior Design Drawings

and the Interior Design Drawings appended or to be appended as Schedule 4 setting out the timetable for the completion by the Exterior Designer and the Interior Designer and availability to the Builder of the Exterior Design Drawings and the Interior Design Drawings.

**"Drawings"** means those plans, drawings, sketches and calculations produced by the Builder in connection with the design and construction of the Yacht requiring the approval of the Purchaser and any relevant regulative authority and which shall be used for the construction, launching, completion, testing and delivery of the Yacht.

**"Effective Date of the Contract"** means the date this Contract, together with all Schedules, is agreed and signed.

**"Exterior Designer"** means Felix Buytendijk Yacht Design, being employed by the Purchaser at the Purchaser's expense.

**"Exterior Design Drawings"** means the drawings, plans and/or other documents to be provided by the Exterior Designer in accordance with the Design Drawings Schedule.

**"Flag State"** means the Marshall Islands and the proper authorities thereof.

**"General Arrangement Plan"** means the general arrangement plan for the Yacht signed by the parties hereto and appended hereto as Schedule 2.

**"Interior Designer"** means Felix Buytendijk Yacht Design, being employed by the Purchaser at the Purchaser's expense.

**"Interior Design Drawings"** means the drawings, plans and/or other documents to be provided by the Interior Designer in accordance with the Design Drawings Schedule.

**"Interior Outfit"** means the Interior Outfit of the Yacht for which the Purchaser is responsible.

**"Interior Outfitting Demarcation List"** means the list describing the interface

between the bare ship and the Interior Outfit, appended hereto as Schedule 10.

**"MCA"** means the United Kingdom Maritime and Coastguard Agency.

**"MCA Code of Practice"** means the Large Commercial Yacht Code issued by the MCA as the same may be amended, supplemented or modified from time to time as interpreted during the build process by the Classification Society on behalf of the Flag State.

**"MCA Certificate of Compliance"** means the Certificate of Compliance to be issued by the Classification Society charged with interpreting the MCA Code of Practice. The MCA Certificate of Compliance will be issued to the Purchaser on delivery of the Yacht confirming that the Yacht, in the opinion with the Classification Society complies with the MCA Code of Practice.

**"Purchaser's Authorized Representative"** means for the time being Bob Murray and/or such other person as the Purchaser may designate from time to time, in writing, to Builder.

**"Purchaser Supplied Items"** means those items required under the Specifications to be supplied by the Purchaser.

**"Permissible Delay"** means any delay which, under the terms of this Contract, shall have the effect of automatically extending the Scheduled Delivery Date.

**"Protocol of Delivery and Acceptance"** means the protocol in the form per Schedule 7 to be signed by the parties upon delivery of the Yacht.

**"Scheduled Delivery Date"** means March 31, 2009, or such earlier or later date as determined in accordance with the terms of this Contract.

**"Specifications"** means the specifications for the construction of a 59.5m Motor Yacht with Hull No. 779 signed by both parties hereto, which shall form an integral part of this Contract and which is appended hereto as Schedule 1.

**"Yacht"** means the motor yacht which is the subject of this Contract.

G /JM

Words importing the singular also include the plural and vice versa; and Words importing any gender also import the other gender.

### 1.3 Order of Precedence

Any conflict, inconsistency or incompatibility between the terms and contents of this Contract, the Specifications, the General Arrangement Plan and the Drawings shall be dealt with as follows:

(a) in case of any inconsistency between any provision in this Contract and any provision in the Specifications, the General Arrangement Plans and/or the Drawings, this Contract shall prevail;

(b) case of any inconsistency between any provision of the Specifications and any provision of the General Arrangement Plan, the Specifications shall prevail;

(c) in case of any inconsistency between any provision of the approved Drawings and the General Arrangement Plan, the approved Drawings shall prevail;

(d) in case of any inconsistency between any provision of the Specifications and any other provision of the Specifications or between one of the Drawings and another of the Drawings, the later in date shall prevail.

## 2. SUBJECT OF CONTRACT

### 2.1 Yacht's Description and Main Characteristics

The Builder undertakes to construct, equip, launch and complete at its shipyard and to sell and deliver to the Purchaser who orders and undertakes to purchase and accept delivery of the same, the Yacht subject to and in accordance with this Contract, the

Specifications, the General Arrangement Plan, and the Drawings. The Yacht shall have the dimensions and characteristics stated in the Specifications and shall, for the purpose of identification only, be known as Hull No. 779.

**2.2 Initial Approval of Drawings**

The Builder shall in due course send to the Classification Society and the Flag State where necessary and to the Purchaser's Authorised Representative, for their approval, five (5) copies in printed and electronic form, of the Drawings for which such approval is required by the Specification. One of the five (5) copies so submitted shall be sent to the Builder, signed by the Purchaser's Authorised Representative either approved, or commented and supplemented with remarks and amendments, to be posted to the Builder within fourteen (14) days after receipt by the Purchaser's Authorised Representative and if this is not done within this time limit the Drawings shall be regarded as approved (subject to any necessary approvals of the Classification Society and the Flag State). If the Drawings are returned to the Builder within the said time limit commented and supplemented with remarks and amendments by the Purchaser, then the Builder will resubmit the Drawings to the Purchaser's Authorised Representative, the Classification Society and the Flag State, where necessary, with details of such amendments added and the area of modification outlined for the approval within seven (7) days by the Purchaser's Authorised Representative. Once the Drawings are finally approved (as amended) then the Builder shall start or continue construction on the basis of the corrected or amended Drawings.

In case of any dispute concerning the Drawings which can not be solved by negotiations within another seven (7) days as from the expiration of the seven (7) day period after resubmission of any Drawing to the Purchaser's Authorised Representative, the dispute shall be referred to expert's final and binding assessment in accordance with Clause 16 Sub-Clause 2(a). Until the dispute is decided or settled the Builder shall continue to build the Yacht as provided in this Agreement as it stands unless directed not to do so by the Purchaser in writing. Any delay caused by such dispute and/or direction by the Purchaser shall, if and to the extent attributable

to the Purchaser, extend the Delivery Date and any additional cost caused by such delay shall be added to the Contract Price.

**2.3. Exterior and Interior Design Drawings**

The Purchaser shall procure that all Exterior and Interior Design Drawings duly approved by the Purchaser are delivered by the Exterior Designer and the Interior Designer in three (3) copies on the dates mentioned in the Design Drawings Schedule (Schedule 4). Any delay in delivery of one or more of the Exterior or the Interior Design Drawings shall constitute Permissible Delay and the Scheduled Delivery Date shall be extended accordingly.

The Builder shall within fourteen (14) days after receipt of the Exterior and Interior Design Drawings which have to be approved by the Builder or third parties, either approve or obtain approval of them, in which case the Builder shall sign one copy of each of the Exterior and Interior Design Drawings and return them forthwith to the Exterior or Interior Designer as applicable by international courier service, or indicate to the Exterior or Interior Designer in writing and in detail in what respect the Builder considers the Exterior and Interior Design Drawings to be deficient or incorrect. The Builder shall be entitled to reject the Exterior and Interior Design Drawings or any of them on the basis that they do not conform to the General Arrangement Plan, Specifications, the Annexes thereto and/or the Drawings. Any delay in construction of the Yacht caused by the Builder's reasonable rejection on one or more of the Exterior or Interior Design Drawings shall constitute Permissible Delay and the Scheduled Delivery Date shall be extended accordingly.

In case of any dispute concerning the Exterior or Interior Design Drawings which can not be solved by negotiations within another seven (7) days as from the expiration of the seven (7) day period, after resubmission of any Exterior or Interior Design Drawings to the Purchaser's Authorised Representative, the dispute shall be referred to expert's final and binding assessment in accordance with Clause 16 Sub-Clause 2(a). Until the dispute is decided or settled the Builder shall continue to

build the Yacht as provided in this Agreement as it stands unless directed not to do so by the Purchaser in writing. Any delay caused by such dispute and/or direction by the Purchaser shall, if and to the extent attributable to the Purchaser, extend the Scheduled Delivery Date.

### 2.4 Maker's List

There is attached to the Specifications a Maker's List (the "Maker's List") of major items for which the Purchaser and the Builder agree on one or more suppliers and/or sub-contractors. The Builder shall be free to choose any of the agreed suppliers and/or sub-contractors. Should the Purchaser or the Purchaser's Authorized Representative notify the Builder that it would prefer a particular supplier and/or sub-contractor other than the one actually chosen by the Builder (whether or not originally proposed by the Builder), and should the Purchaser's preference involve a cost change or have influence on the Scheduled Delivery Date, and/or the Yacht's characteristics, including the Yacht's speed, range, draft, noise levels, and tonnage, the Builder shall provide Purchaser with a Change Order pursuant to Clause 4 herein. Purchaser shall then have the option to notify the Builder within five (5) business days from the date of receipt of such quotation, that it insists on its preference, and in such case the parties shall sign the Change Order accordingly. Should Purchaser fail to notify Builder of Purchaser's objection to any of the suppliers and/or sub-contractors contained in the Maker's List, Builder shall be free to use any of the suppliers and/or sub-contractors listed on the Maker's List.

It is agreed that all and any contacts with the Builder's suppliers and/or sub-contractors concerning the Builder's supplies intended for the Yacht under this Contract shall be made by the Builder only.

### 2.5 Inspection of Equipment

The Builder agrees and shall ensure that all work performed by Builder, and the equipment and the components used and to be used in the construction of the Yacht,

shall be available for inspection and testing by the Classification Society, the Flag State and/or any other relevant regulatory bodies. Builder shall make all necessary facilities available (at the Builder's cost) so that such inspections and tests can be carried out safely and conveniently.

**2.6 Yacht's Registration and Classification**

(a) The Yacht shall be constructed, equipped and completed:

(i) to comply with the applicable laws, rules, regulations and enactments published and in force in the Flag State on the Effective Date of the Contract as stated in the Specifications;

(ii) under the survey of the Classification Society to the Class Notation, under the applicable Classification rules, regulations and enactments published and in force on the Effective Date of the Contract as stated in the Specifications, (the Builder will work with the Classification Society to make the constructional provisions in order to have the Yacht to comply with the requirements of the "EP" notation) together with an MCA Certificate of Compliance in accordance with the MCA Code of Practice under the survey of the Classification Society;

(iii) in accordance with first-class international luxury yacht building practices of the Builder for new Yachts of the type and general characteristics of the Yacht as defined and described in the Specifications.

(b) The Builder shall ensure that all requisite inspections by the Flag State, the Classification Society, and any other relevant regulatory authorities take place in timely manner and with satisfactory results.

(c) Classification, Flag State, and any other relevant regulatory body survey and testing charges relating to the Builder's obligations and all items of

supply under this Contract shall be for the Builder's account.

(d) The registration of the Yacht shall be carried out by the Purchaser and the costs and expenses thereof shall be for the Purchaser's account. The Builder shall give the Purchaser such assistance in connection with the registration of the Yacht as is reasonable in all the circumstances.

(e) The Builder hereby agrees that the Yacht shall be designed and built as a yacht for commercial use within the meaning of the MCA Code of Practice and not for use as a passenger ship within the meaning of the Merchant Shipping (Passenger Ship Construction: Ships of Classes I, II and II(A) Regulations 1988, as amended and supplemented from time to time).

**2.7 Decisions of the Classification Society and Flag State**

The technical decisions of the Classification Society and/or the Flag State authorities as to the Yacht's compliance or non-compliance with the rules and regulations, observance of which is to be controlled by the Classification Society and/or the Flag State authorities respectively, shall be final and binding on the parties hereto.

**2.8 Quality Control**

The Builder shall ensure that all engines, machinery and major equipment to be installed in the Yacht are subjected to the quality control procedures prescribed by ISO 9001.

**2.9 Purchaser Supplied Items**

(a) The Purchaser Supplied Items shall be delivered, at Purchaser's risk, by the Purchaser to the Builders' premises in good condition and ready for installation in the Yacht. Delivery shall be in compliance with the Action List and the Builders' Construction Schedule. Any delay in the



C/ DM

delivery of the Purchaser Supplied Items shall be Permissible Delay and the Scheduled Delivery Date shall be adjusted accordingly.

(b) The Purchaser's Authorized Representative shall conduct quality and quantity checks of the Purchaser Supplied Items upon the arrival of the Purchaser Supplied Items at the Builders' premises. The Builder shall provide adequate storage and shall insure the Purchaser Supplied Items in accordance with the terms of this Contract whilst at the Builders' premises. Builder shall install Purchaser Supplied Items on board in accordance with Builder's Construction Schedule.

(c) The Purchaser shall furnish the Builder with all specifications, drawings, instruction books, manuals, test reports and certificates required for proper installation and operation of the Purchaser Supplied Items and any other information provided by the manufacturer as may be required by the Classification Society. In case Purchaser fails to furnish Builder with all such specifications, drawings, instruction books, manuals, test reports, and certificates for a Purchaser Supplied Item, in accordance with the Action List and Builder's Construction Schedule, as required by the Builder for the installation of such Purchaser Supplied Item, any resulting delay shall be considered Permissible Delay and the Scheduled Delivery Date shall be adjusted accordingly.

**2.10 Interior Outfit**

(a) The Interior Outfit of the Yacht is to be provided by the Purchaser. The Builder does not assume any responsibility or liability with regard to the Interior Outfit, except as provided herein. The interface between the scope of work of the Builder and the Interior Outfit is described in the Interior Outfitting Demarcation List.

(b) The Purchaser will supply and install the Interior Outfit by using materials and methods which are consistent with the requirements and Specifications

related to specified noise and vibration standards as pre-approved by the Builder, the Classification Society and the Flag State and in compliance with the weight limits for the Interior Outfit as stipulated in the Weight Limits List attached as Schedule 11. The delivery and installation of the Interior Outfit has to be executed within the time frame laid down in the Builders' Construction Schedule and in the Action List by the contractor(s) chosen and employed by the Purchaser who will not interfere with the Builders' scope of work. Any delay in delivering and installing of the Interior Outfit shall be a Permissible Delay.

(c) The Purchaser shall furnish the Builder with all documentation related to the Interior Outfit which is needed for Classification of the Yacht.

**2.11 Allowances**

Where the Contract Price includes an Allowance as stipulated in Sub-Clause 8.1(c), the Builder shall, on the dates shown in the Action List, provide Purchaser with offers from the relevant suppliers containing the offer's technical, commercial, legal and payment terms to be agreed upon between the Builder and the Purchaser. Upon agreement between the Builder and Purchaser as to any offer for Allowance items, the Builder in its own name shall place orders with those suppliers. Should agreement between the Builder and the Purchaser not be reached by the relevant dates shown in the Action List, any resulting delay shall be Permissible Delay and the Scheduled Delivery Date shall be adjusted accordingly. The Builder shall be responsible for the items so procured including the installation and or stowage of such items. Builder shall be responsible for making any warranty claims against the suppliers for the benefit of the Purchaser, but shall not himself bear any warranty obligation towards the Purchaser with regard to such items.

## 3. INSPECTION

### 3.1 Inspection during construction

(a) The Purchaser shall have the right to have the Yacht and all engines, machinery, equipment, materials and workmanship intended therefore inspected, photographed and filmed during construction by the Purchaser and/or the Purchaser's Authorized Representative. The Builder shall grant the Purchaser and/or the Purchaser's Authorized Representative free access to the Yacht and the Builder's Premises for such purposes during normal working hours. The Purchaser shall notify Builder in writing of Purchaser's Authorized Representative prior to the Representative's first attendance at the Builder's Premises.

(b) The Builder shall use its reasonable efforts to ensure that Purchaser and Purchaser's Authorized Representative shall have the same right of access to all its subcontractors' premises for inspection purposes.

(c) The Purchaser's Authorized Representative shall notify the Builder in writing if he discovers any work, equipment or component which he believes does not or will not conform to the requirements of this Contract, the Specifications and/or the Drawings. Any notice hereunder shall be delivered no later than five (5) Business Days from the date of discovery of non-conformity.

(d) The Builder shall comply with the reasonable demands of the Purchaser's Authorized Representative concerning the necessary rectification or replacement of the said non-conforming work, equipment or component. If the Builder does not agree with the Purchaser's Authorized Representative as to such non-conformity, the matter will be referred to the expert or to arbitration in accordance with Clause 16.

(e) Any written decision of the Purchaser's Authorized Representative will be

C/ pm

binding on the Purchaser. The Purchaser's Authorized Representative shall represent the Purchaser in all aspects of the construction and delivery of the Yacht including the signing of Change Orders.

(f) The Purchaser's Authorized Representative shall observe the work rules prevailing at the Builder's Premises and its subcontractors' premises and address his remarks exclusively to the Builder's appointed Representative whose name shall be made known to the Purchaser in advance.

(g) The Builder, at its own expense, will provide the Purchaser's Authorized Representative with office space at the Builder's Premises including telephone, fax and photocopier. Telephone and fax charges shall be for the Purchaser's account. The Builder shall not be responsible for any other supplies and/or expenses in connection with the Purchaser's Authorized Representative, who shall at all times be an employee of the Purchaser.

**3.2 Indemnifications**

The Purchaser shall indemnify and hold harmless the Builder, and its employees and subcontractors against any liabilities, costs, claims, losses or damage arising from any injury, disease or death of the Purchaser, the Purchaser's Authorized Representative, the Purchaser's Yacht crew, or any of the Purchaser's employees. The provisions of this Clause shall not apply to any claim, liability, loss or damage arising from injury, disease or death suffered by the Purchaser, the Purchaser's Authorized Representative, the Purchaser's Yacht crew, or any of the Purchaser's, employees, where the injury, disease or death, claim, liability, cost, loss or damage was caused or contributed by the negligence and/or breach of statutory duty on the part of the Builder or its employees.
The Builder shall indemnify and hold harmless the Purchaser, the Purchaser's Authorized Representative, the Purchaser's Yacht crew, and any of the Purchaser's employees, against any liabilities, costs, claims, losses or damage arising from any injury, disease or death of any employees of the Builder. The provisions of this Clause shall not apply to any claim, liability, costs, loss or damage arising from any injury,

disease or death suffered by any employee of the Builder, where the injury, disease or death, claim, liability, cost, loss or damage was caused or contributed by the negligence and/or breach of statutory duty on the part of the Purchaser, the Purchaser's Authorized Representative, the Purchaser's Yacht crew, or any of the Purchaser's employees.

### 3.3 Meetings and Meeting Protocols

At least monthly, the parties will meet at the Builder's Premises, or such other place as may be mutually and reasonably agreed between the parties, to decide about details of the design and assess the progress of the construction of the Yacht. The outcome of these meetings will be documented by the Builder in meeting protocols. These meeting protocols if mutually agreed and signed between the Purchaser's Authorised Representative and the Builder shall, if applicable, change the Specification and the General Arrangement Plan to the extent that these changes have no impact on the Contract Price, Scheduled Delivery Date and the performance characteristics of the Yacht including speed, range, draft, noise levels and tonnage. For the avoidance of doubt, the meeting protocols shall NOT constitute a written Change Order.

### 3.4 Errors and Omissions

(a) Errors and omissions in drawings, calculations and technical information prepared or supplied by the Builder shall be the Builder's responsibility.

(b) Errors and omissions in drawings, calculations and technical information prepared or supplied by the Purchaser, the Interior Designer or the Exterior Designer shall be the Purchaser's responsibility.

(c) However, Builder, nonetheless, is responsible for verifying the Interior Design Drawings and the Exterior Design Drawings to ensure that the Builder is able to construct, equip, launch, and complete the Yacht in accordance with this Contract, including the Specifications and Drawings, and the standards referenced therein.

## 4. MODIFICATIONS

### 4.1 Purchaser's Modifications

(a) At any time prior to the Scheduled Delivery Date, the Purchaser may request, in writing, that the Builder make modifications to the Drawings, the General Arrangement Plan, and/or the Specifications. The Builder shall carry out such modifications **provided that** the Builder and the Purchaser have previously agreed upon by signing a Change Order:

(i) any consequential adjustment to the Contract Price;

(ii) any consequential adjustment to the Scheduled Delivery Date; and

(iii) any consequential adjustment to the characteristics of the Yacht, including the Yacht's speed, range, draft, noise levels, and/or tonnage, as set out in the Contract, the General Arrangement Plan, the Specifications and the Drawings;

(b) The Purchaser will endeavour to keep modifications to the Drawings, the General Arrangement Plan, and the Specifications to a minimum. The Builder shall continue production on the basis of the Drawings, the General Arrangement Plan, and the Specifications unless otherwise directed by the Purchaser in writing, until agreement as to any requested change has been reached as above stated and a Change Order signed in accordance with Sub-Clause 4.3.

### 4.2 Modifications by Regulatory Bodies and the Classification Society

(a) Subject to the following provisions of this Sub-Clause if, after the Effective Date of the Contract, modifications, deletions or additions are made to the laws, rules, regulations and enactments applicable to the Yacht and its construction including, but not limited to, the MCA Code of Practice or their interpretation or their application, including but not

limited to, withdrawal of provisional approvals of the Classification Society and/or additional requirements of the Classification Society as compared with the basis of this Contract and/or similar measures of regulatory bodies or the Flag State and such modifications, deletions or additions are compulsory for the Yacht, the Builder shall, as soon as practicable after the coming into force of any alterations and changes in the requirements made to the laws, rules, regulations, and enactments applicable to the Yacht and its construction including such changes in the requirements made to the laws, rules, regulations, and enactments applicable to the Classification Society, the MCA, the Flag State, or any other relevant regulatory body, notify the Purchaser of the required changes by submitting a Change Order to Purchaser containing:

(i) any adjustment to the Contract Price;

(ii) any adjustment to the Scheduled Delivery Date; and

(iii) any other adjustment to the characteristics of the Yacht, including any adjustments to the Yacht's speed, range, draft, noise levels, and tonnage as set out in this Contract, the General Arrangement Plan and the Specifications;

The Builder agrees to use all reasonable efforts to monitor such alterations and changes in the requirements of the MCA, the Flag State, Classification Society and any other relevant regulatory bodies.

(b) Should the Purchaser consider that the operation of the Yacht in its intended service permits a waiver of compliance with such modifications, deletions or additions from the authority by whom the modifications, deletions or additions have been promulgated, the Purchaser may (but shall not be obliged to) authorize the Builder first to apply formally for such waiver provided that:

(i) if such waiver has not been obtained within five (5) Business Days (or such other period as the Purchaser may specify), the Builder will carry out the required modifications, deletions or additions subject to the Change Order being signed in accordance with Sub-Clause 4.3; and

(ii) any additional cost caused by the application for such waiver whether or not obtained shall be for the account of the Purchaser and the time between application for such waiver and the final decision of the competent authority thereon shall be a Permissible Delay and the Scheduled Delivery Date shall be modified accordingly.

(c) If the Purchaser requests the Builder to carry out modifications by regulatory bodies, the Flag State, and/or by the Classification Society which are not compulsory for the Yacht, the modifications shall be treated as Purchaser's modifications to which the provisions of Sub-Clause 4.3 shall apply.

(d) The Builder, after consultation with Purchaser's Authorized Representative, is entitled to make minor changes to the Specification and Drawings, if such changes are found necessary to suit the Builder's local conditions and facilities, the availability of materials and equipment, the introduction of improved production methods or otherwise **provided that** such minor changes have no impact on the performance characteristics of the Yacht including speed, range, draft, noise levels and tonnage and no impact on the Contract Price and the Scheduled Delivery Date.

### 4.3 Change Orders

All material particulars of any agreed modifications, additions and deletions of a kind referred to in this Clause shall be set out in a sequentially numbered and dated Change Order in the form per Schedule 6, signed by the Builder and the Purchaser or

their duly authorized representatives.

The Builder shall notify the Purchaser of any adjustments to the Contract Price, Scheduled Delivery Date, and changes to the Yacht's characteristics, including speed, range draft, noise levels, and tonnage, as soon as practicable. Thereafter the Builder and the Purchaser shall negotiate in good faith with a view to reaching agreement on the Change Order within ten (10) Business Days **provided that** in default of agreement on the Change Order, the matter shall be resolved in accordance with Sub-Clause 16.2.

### 4.4 Payment of Adjustments to the Contract Price

Any adjustments to the Contract Price made under Sub-Clause 4.2 and 4.3 shall be paid by the Purchaser in accordance with Sub-Clause 8.3.

## 5. TESTS AND TRIALS

### 5.1 Sea Trials

The sea trials shall be carried out in the manner and under the weather conditions specified in Section 06 of the Specifications. The Builder shall give the Purchaser, the Classification Society, the Flag State, and any other relevant regulatory bodies at least ten (10) Business Days notice in writing of the time and place of the sea trials. Such notice shall specify the port from which the sea trials are expected to take place.

### 5.2 Conduct of Sea Trials

The Purchaser's Authorized Representative, the representative of the Classification Society, the representative of the Flag State, technical and such other representatives of the regulatory bodies as are required to witness the sea trials, shall be on board to witness all sea trials. At Purchaser's election, the Purchaser may also attend on board

to witness the sea trials together with such technical advisors as the Purchaser may deem necessary.

The Builder shall make sure that, if necessary, the Classification Society and/or the Flag State, and any other relevant regulatory bodies attend the sea trials. If any of the sea trials have to be postponed as a result of the failure of the Classification Society and/or the Flag State, and any other relevant regulatory bodies to attend following the ten (10) Business Day notice to it or them from the Builder of any of the sea trials, any delay caused thereby shall be a Permissible Delay, and the Scheduled Delivery Date shall be adjusted accordingly.

**5.3 Delay on Sea Trials**

Any delay in the commencement or conduct of the sea trials due to unfavourable weather conditions shall be a Permissible Delay and the Scheduled Delivery Date shall be adjusted accordingly. If the Yacht suffers any breakdown during any of the sea trials which in turn causes an interruption to the proceedings or irregular performance in the sea trials which can be repaired by the normal means available on board the Yacht, the sea trials shall continue after the necessary repairs have been made. If, however, the Yacht has to return to a port to enable the repairs to be made, such tests that have not been finalized shall be redone, and any additional tests required to prove that the resulting repairs to the Yacht were successful shall be performed to show the repairs' compliance with this Contract and the Specifications, unless otherwise agreed in writing by the Purchaser and Builder or their Authorized Representatives. Any delay in Scheduled Delivery Date resulting there from, shall not be a Permissible Delay.

**5.4 Notification of Deficiencies**

The Purchaser or the Purchaser's Authorized Representative shall notify the Builder of any deficiencies found during any sea trial as to compliance with this Contract, the General Arrangement Plan, and/or the Specifications within three (3) Business Days after completion of a test or trial. If at any test or trial of the Yacht or any part of her

machinery or equipment fails to satisfy the requirements of this Contract, the Specifications and/or the General Arrangement Plan, the Builder shall repeat such tests or trials as may reasonably be necessary to demonstrate that the Yacht complies with this Contract, the Specifications and/or the General Arrangement Plan.

**5.5 Cost and Expenses of Test and Trials**

All expenses in connection with the factory acceptance tests, installation tests, dockside trials and the sea trials of the Yacht shall be paid by the Builder, who during such test and trials and when delivering the Yacht for such tests and trials shall provide, at its own expense, the necessary crew for the safe navigation of the Yacht, as well as all fuel oil, lubricating and hydraulic oil, grease and fresh water and other necessary stores required in connection with the tests and/or trials (unless otherwise agreed with the Purchaser), together with the necessary ballast (sea and fresh water and such other ballast as may be required) to bring the Yacht to the trial load drafts as specified in this Contract, the Specifications and the sea trials Program.

**5.6 Preliminary Sea Trials**

The Builder shall be entitled to conduct preliminary sea trials following which the main engines and other characteristics of the Yacht shall be adjusted to comply with this Contract, the Specifications and the General Arrangement Plan. Purchaser and/or Purchaser's Authorized Representative, and any of Purchaser's technical advisers shall be entitled to attend such preliminary sea trials.

**5.7 Consumables**

The Builder will supply fuel oil, diesel/gas oil, lubrication oil and hydraulic oil required for the purpose of completing the Yacht's trials and the Purchaser shall on delivery and presentation of the invoice(s) for fuel oil, diesel/gas oil, lubrication oil and hydraulic oil paid by Builder, reimburse the Builder for the cost of such quantities as are not consumed on trials and which remain on board.

## 6. LIQUIDATED DAMAGES

### 6.1 Speed

If the Yacht's actual trial speed corresponding to the specified load is less than the specified knots, as liquidated damages and not as penalty, the Contract price shall be reduced by the following amounts:

(a) for the first one-half (1/2) knot of lesser speed, no reduction; and

(b) for each successive full one tenth (1/10) knot lesser speed thereafter (fractions being disregarded), One Hundred Thousand Euros (€ 100,000.00)

**provided that** if the deficiency in the Yacht's speed is more than one (1) full knot, then the Purchaser at its option may continue to claim and receive liquidated damages or, alternatively, terminate and/or rescind this Contract in accordance with Clause 12.

### 6.2 Range

If the Yacht's range at the specified conditions, is less than the specified nautical miles range, as liquidated damages and not as penalty, the Contract price shall be reduced by the following amounts:

(c) for the first 200 nautical miles of range deficiency, no reduction; and

(d) for each successive 100 nautical miles thereafter (distances less than 100 nautical miles being disregarded), Three Hundred Thousand Euros (€ 300,000.00).

**provided that** if the deficiency in the Yacht's range is more than one thousand five hundred (1500) nautical miles, then the Purchaser, at its option, may continue to claim and receive liquidated damages or, alternatively, notwithstanding anything in any other Clause herein to the contrary, terminate and/or rescind this Contract in accordance with Clause 12.

**6.3 Draft**

If the Yacht's draft at the specified conditions, exceeds the specified draft, as liquidated damages and not as penalty, the Contract price shall be reduced by the following amounts:

(a) for the first ten (10) centimeters excess draft, no reduction; and

(b) for each successive full ten (10) centimeters thereafter, Three Hundred Thousand Euros (€ 300,000.00).

**provided that** if the deficiency in the Yacht's draft is more than thirty (30) centimeters, then the Purchaser, at its option, may continue to claim and receive liquidated damages or, alternatively, terminate and/or rescind this Contract in accordance with Clause 12.

**6.4 Noise levels**

If the actual noise level in any area of the Yacht exceeds the level permitted for that area by the Specifications, in any of the conditions stated, as liquidated damages and not as penalty, the Contract price shall be reduced by the following amounts:

(a) for the first two dB(A) of excessive noise, no reduction; and

(b) for each successive dB(A) thereafter (fractions being disregarded), Twenty Thousand Euros ( 20,000.00 EUR).

**provided, that** if the actual noise level in any area is more than five (5) dB(A) greater than the level permitted for that area by the Specifications, then the Purchaser at its option may continue to claim and receive liquidated damages or, alternatively, terminate and/or rescind this Contract in accordance with Clause 12.

**6.5 General**

(a) The Builder shall be entitled before delivery to take such remedial action as it considers appropriate (without thereby adversely affecting



Gjum

any other characteristic of the Yacht) to correct any deficiency in the Yacht's speed, range, draft, or any excessive noise; **provided that** no such remedial action shall constitute grounds for an extension of the Scheduled Delivery Date.

(b) The Purchaser shall not be entitled to terminate or rescind this Contract after delivery of the Yacht has taken place, whether on the grounds set out above or any other grounds.

(c) Any liquidated damages to be deducted from the Contract Price by virtue of Clauses 6 and 7 shall be by way of liquidated damages and do not constitute a penalty.

## 7. DELIVERY OF THE YACHT

### 7.1 Delivery Date

The Yacht shall be delivered to the Purchaser in international territorial waters nearest to the Builder's Premises in accordance with this Contract on or before the Scheduled Delivery Date, subject to Permissible Delays by the terms of this Contract. The Purchaser shall promptly take delivery of the Yacht after Builder has successfully demonstrated compliance with the requirements contained in this Contract, Specifications, General Arrangement Plans and/or the Drawings, and shall remove her from the place of delivery not later than ten (10) Business Days after such date.

Delivery of the Yacht and acceptance by the Purchaser shall be evidenced by the execution of a Protocol of Delivery and Acceptance (the form of which is appended hereto as Schedule 7) signed by the Parties hereto. Upon the execution of this Protocol of Delivery and Acceptance, the risk of the Yacht shall transfer to the Purchaser.

**7.2 Purchaser's Remedies for Delay**

If, for reasons for which the Builder is responsible, the Yacht is not delivered on or before the Scheduled Delivery Date in accordance with the terms of this Contract, the Purchaser shall deduct from the Contract Price, as liquidated damages and not as penalty, the amount of Fifteen Thousand Euros (€ 15,000.00) per calendar day, for each full day of delay,

**provided that** if the delay in delivery of the Yacht exceeds 180 calendar days from the Scheduled Delivery Date, as extended pursuant to Permissible Delay, the Purchaser, at its option, may continue to claim and receive liquidated damages, or alternatively, terminate this Contract in accordance with Clause 12. In any event, however, the maximum amount of liquidated damages to be claimed by Purchaser and paid by the Builder for delay in delivery shall be limited to Two Million Seven Hundred Thousand Euros (€ 2,700,000.00).

The period of 180 calendar days noted above (the "First Extension Period") shall, however, be extended for the period reasonably required to correct any defect or deficiency discovered during, or in connection with tests and/or trials performed not earlier than forty (40) days prior to the Scheduled Delivery Date causing delay in delivery of the Yacht (the "Second Extension Period"), **provided further that** notwithstanding anything in this Contract to the contrary, per diem liquidated damages in the amount of Fifteen Thousand Euros (€ 15,000.00) per calendar day shall become due for the Second Extension Period for each additional day's delay beyond the First Extension Period, and the aggregate period of this Second Extension Period does not exceed 180 days.

The Purchaser's rights, remedies and claims for delay in delivery in accordance with the Scheduled Delivery Date as adjusted to reflect Permissible Delay, including consequential loss are limited to liquidated damages calculated according to Sub-Clause 7.2. All other rights, remedies and claims are expressly excluded.

**7.3 Termination for Delay**

If the delay in delivery of the Yacht exceeds the First Extension Period and the Second Extension Period (if applicable), stipulated and defined under Clause 7.2, then the Purchaser, as an alternative to receiving the above mentioned liquidated damages, shall have the option to terminate and/or rescind this Contract, as noted in Sub-Clause 7.2, in accordance with Clause 12 hereof.

**7.4 Force Majeure**

(a) In this Sub-Clause the term "Force Majeure Event" shall mean any event beyond the control of the Builder or its subcontractors such as:

(i) Acts of God;

(ii) engagement in war or other hostilities or mobilisation or preparations therefore;

(iii) civil war, civil commotion, revolutions, riots or insurrections;

(iv) requirements of civil or military authorities;

(v) blockades (including blockades in the transportation) or embargoes;

(vi) epidemics and quarantines;

(vii) earthquakes, tidal waves, landslides, floods, blizzards, Beaufort Wind Scale force 10 Storm Force winds, and the like;

(viii) prolonged failure, or shortage of electric current, oil or gas;

(ix) damage by lightning, explosions, collisions, strandings or fires;

(x) delays of the Classification Society or the Flag State or any other regulatory authorities where documents are required pursuant to this Contract;

(xi) any default, action or omission on the part of the Purchaser as may be

required in accordance with this Contract;

(xii) strikes, lockouts.

(b) If the Builder is prevented from constructing, equipping, completing and delivering the Yacht within the time required by this Contract by reason of a Force Majeure Event, then and in any such case (but subject to the following provisions of this Sub-Clause) the Scheduled Delivery Date shall be postponed by the number of working days of delay incurred by the Builder in completing or delivering the Yacht in consequence thereof.

(c) The Builder shall take reasonable steps (including the rearrangement of work programmes) to overcome or reduce the effects of any delay in the construction and delivery of the Yacht.

(d) It shall be a condition of the Builder's reliance on any Force Majeure Event that:

(i) as soon as possible, but in all events within five (5) Business Days after the commencement thereof, the Builder shall notify the Purchaser, in writing, of the nature of the Force Majeure Event, the effects and likely duration and future effects thereof, and the steps taken and intended to be taken to overcome or reduce such effects. Builder's failure to provide the specified notice shall be deemed a waiver of any claim for extension of the Scheduled Delivery Date due to a Force Majeure Event. Any objection to Builder's claim for extension of the Scheduled Delivery Date due to a Force Majeure Event, as submitted by the Builder, shall be sent by Purchaser to Builder, in writing, within three (3) Business Days after Purchaser's receipt of Builder's notice. Should Purchaser fail to submit any written objection to Builder's notice within the specified time, Purchaser shall be deemed to have waived any objections to such

claim for extension of the Scheduled Delivery Date due to a Force Majeure Event. Should Purchaser and Builder be unable to agree on any claim for extension of the Scheduled Delivery Date due to a Force Majeure Event, the dispute shall be settled in accordance with Clause 16; and

(ii) as soon as possible, but in all events within five (5) Business Days after the cessation thereof, the Builder shall notify the Purchaser, in writing, of the number of working days of delay incurred by reason of such Force Majeure Event. Any objection to the number of days for extension of the Scheduled Delivery Date due to a Force Majeure Event, as submitted by the Builder, shall be sent by Purchaser to Builder, in writing, within three (3) Business Days after Purchaser's receipt of Builder's notice. Should Purchaser fail to submit any written objection to Builder's notice within the specified time, Purchaser shall be deemed to have waived any objections to such claim for extension of the Scheduled Delivery Date due to a Force Majeure Event. Should Purchaser and Builder be unable to agree on the number of days for extension of the Scheduled Delivery Date due to a Force Majeure Event, the dispute shall be settled in accordance with Clause 16.

**7.5 Notice of Delivery, Minor Non-Conformities and Documents**

(a) The Yacht will be tendered for delivery in accordance with this Contract and the Purchaser will accept delivery in accordance with this Contract and after:

(i) the completion of the sea trials; and

(ii) completion of any defects requiring rectification, **provided that** such defects shall not include minor non conformities ("Minor Non Conformities")..

(b) If on delivery there are any outstanding Minor Non Conformities, the Parties shall draw up a list of agreed Minor Non Conformities together with a schedule setting out the method and reasonable time frame for their rectification.

In such case delivery of the Yacht by the Builder and acceptance by the Purchaser shall be effected notwithstanding the Minor Non Conformities and the Protocol of Delivery and Acceptance shall be signed by the Parties subject to the rectification of the Minor Non Conformities **provided that** the Purchaser is entitled to retain as security from the delivery installment such amount as is reasonably required to correct the Minor Non Conformities.

(c) Upon delivery and acceptance of the Yacht demonstrated by the fully executed Protocol of Delivery and Acceptance, the Builder will deliver to the Purchaser:

(i) a Builder's Certificate in respect of the Yacht in the form appended hereto as Schedule 8;

(ii) a declaration of warranty from the Builder that the Yacht is delivered to the Purchaser free of any claims, debts, liabilities, liens, charges, mortgages or other encumbrances of any nature whatsoever caused by the Builder and/or Builder's subcontractors, employees, crew, or agents, and of all liabilities arising from the operation of the Yacht in the sea trials or otherwise prior to delivery to the Purchaser;

(iii) all Classification certificates required by the Classification Society for a commercial yacht of this Class Notation, size and use requirements, trading and other certificates and documents provided for in the Contract and Specifications including a clean Classification Certificate, and an MCA Certificate of Compliance and any ancillary certificates thereto, for avoidance of doubt, all Classification Society

certificates and/or other certificates required by the Flag State shall be issued by the Classification Society on behalf of the Flag State and not on behalf of the MCA;

(iv) a bill of sale ready for execution by Builder;

(v) a report on the sea and dock trials of the Yacht;

(vi) inventories of equipment of the Yacht, including spare parts as stated in the Specifications and as built;

(vii) inventories of stores, if any, together with copies of the original invoices covering the purchase of the stores;

(viii) the as built drawings and plans of the Yacht necessary for the proper operation and maintenance of the Yacht;

(ix) all other documents that the Specifications require the Builder to provide to the Purchaser upon delivery of the Yacht, including but not limited to, complete instruction manuals for the operation of the Yacht and its machinery, any and all manufacturer's warranties associated with the Yacht's equipment and machinery, and any and all plans of the Yacht, including but not limited to the as built electrical wiring plans, the plumbing plans, the hydraulic system plans, and the air conditioning and ventilation plans;

(x) assignments of warranties granted by manufacturers of the equipment installed in the Yacht, if any;

(xi) the required export documents; and

(xii) proof of payment by Builder to Purchaser of the amount of all undisputed liquidated damages, if any.

(d) If, through no fault of the Builder, permanent certificates are not obtainable on delivery of the Yacht, provisional certificates shall be

accepted by the Purchaser, provided the absence of such permanent certificates does not affect the seaworthiness of the Yacht. The Builder shall provide the Purchaser with the permanent certificates as soon as possible and within the period of the validity of the aforesaid provisional certificates, subject to the Builder receiving any co-operation from the Purchaser necessary for it to be able to obtain such certificates.

## 8. CONTRACT PRICE AND TERMS OF PAYMENT

### 8.1 Contract Price

(a) The price to be paid by the Purchaser to Builder for the performance of this Contract shall be the sum of Thirty Four Million Two Hundred Thirty Five Thousand EUROS (€ 34,235,000.00), (the "Contract Price"). The said sum is subject to variation thereto as agreed between the parties in accordance with any signed Change Orders.

(b) Except as herein specifically provided, the Contract Price is:

(i) a fixed price;

(ii) exclusive of the cost of the Purchaser Supplied Items as provided by this Contract; and

(iii) exclusive of VAT applicable on the Contract Price, if any.

(c) The Contract Price includes the following Allowances:

| No. | Item | Allowance |
|---|---|---|
| 1 | Navigation and communication equipment | EUR 400,000.00 |
| 2 | Entertainment, computer, security systems, CCTV | EUR 400,000.00 |

Where and when in the course of the procedure per Sub-Clause 2.11 the actual price of the offer(s) of the supplier(s) agreed between the Purchaser and Builder exceed(s) the relevant Allowance, such exceeding amount shall be paid forthwith by the Purchaser to the Builder when Purchaser's next installment is due. Similarly, where and when it becomes certain that the actual price of the offer(s) of the supplier(s) falls short of the relevant allowance, the Builder shall forthwith credit the amount of this shortfall to the Purchaser and deduct it from the Purchaser's next installment.

(d) Payment terms:

Payment of the Contract Price shall be made by the Purchaser to the Builder by ten (10) installments as follows:

| Installment | Percentage of Contract Price | Installment Due Date |
|---|---|---|
| 1 | 10 | Within Ten (10) Business Days after the Effective Date of the Contract |
| 2 | 10 | start of plate cutting |
| 3 | 10 | on keel laying |
| 4 | 10 | on placing main engines on their |

CJMM

| | | |
|---|---|---|
| | | foundations |
| 5 | 10 | on assembling and welding of hull blocks finished |
| 6 | 10 | on launching |
| 7 | 10 | on aluminum superstructure welded to hull |
| 8 | 10 | On first control primer applied to hull |
| 9 | 10 | on start of tests and trials |
| 10 | 10 | on signing the Protocol of Delivery and Acceptance |

**8.2 Payment Procedures**

(a) Except for the first installment the Builder shall notify the Purchaser at least ten (10) Business Days in advance of the estimated dates of the installment payments falling due.

(b) The installments of the Contract Price referred to in Sub-Clause 8.1(d) 2-9 (inclusive) shall become due and payable five (5) Business Days after:

(i) the relevant events referred to in Sub-Clause 8.1(d) have been reached, Purchaser has received an invoice from Builder for the relevant amount of the installment (together with any additional costs or credits due to or from the Builder respectively), and

(ii) the relevant stage certificate has been signed by the Builder and by the Purchaser's Authorized Representative on behalf of the Purchaser. Any dispute between the Builder and the Purchaser's Authorized Representative as to the completion of the relevant stage shall be resolved by the surveyor of the Classification Society.

(c) All payments to the Builder are to be made in Euros on the dates on which the payments are due to the credit of the Builder's

Bank Name: Dresdner Bank, Rendsburg

**Account no: 214 244 200**

**Bank Code: 214 800 03**

**Swift Code No: IBAN DE 40 2148 0003 0214 2442 00**

(d) Expenses for remitting payments and any other expenses connected with such payments shall be for the account of the Purchaser.

(e) The foregoing installments, other than the final installment, are in the nature of advances by the Purchaser to the Builder. It will be a condition of the Advanced Payment Refund Guarantee that Purchaser has paid each installment due. The Builder, prior to the due date of each installment up to and including the ninth installment, has delivered to the Purchaser one Advanced Payment Refund Guarantee. This Advance Payment Refund Guarantee shall be issued by ThyssenKrupp AG, the Builder's ultimate parent company, in the form appended hereto as Schedule 9 securing the refund to the Purchaser of installments 1 through 9.

**8.3 Payment for Change Orders**

Following agreement (for modifications under Sub-Clause 4.1, 4.2 and 4.3) the sums due for modifications under Clause 4 shall be paid pro rata with the remaining installments of the Contract Price at the same times and in the same manner as those installments.

**8.4 Liquidated Damages and Premiums**

Any amounts to be deducted from the Contract Price for liquidated damages or any

premiums payable shall be calculated and agreed prior to delivery of the Yacht as evidenced by the signing of the Protocol of Delivery and Acceptance.

### 8.5 Limitation of Liability

Unless otherwise stated herein any remedy or any amount to be deducted from the Contract Price under Clause 6 and 7 hereof shall be by way of liquidated damages for the failure of the Builder to comply with relevant delivery date, speed, range, draft, and noise level requirements in this Contract and Specifications, and shall be considered as full and final settlement of any such non-compliance of the Builder with the relevant delivery date, speed, range, draft, and noise level requirements of this Contract and/or the Specifications to the exclusion of any further claims related thereto.

### 8.6 Letter of Comfort

The Purchaser together with the payment of the first installment shall, on request, provide to the Builder a Letter of Comfort in a form and from a financial institution as agreed between the Purchaser and the Builder.

## 9. PROPERTY, PURCHASER SUPPLIED ITEMS AND IP-RIGHTS

### 9.1 The Yacht

Title to the Yacht shall pass to Purchaser upon execution of the Protocol of Delivery and Acceptance.

The Builder agrees that in the event that the Purchaser enters into an agreement ("Purchaser's Financing Facility") for the financing of the Yacht with a bank, financial institution or other lender ("the Purchaser's Lender") the Builder will consent to an assignment by the Purchaser to the Purchaser's Lender of Purchaser's rights under this Contract , including those Schedules which Purchaser agrees to assign, as security for the

Purchaser's Financing Facility, as may be required by the Purchaser's Lender and will co-operate with the Purchaser with respect to the Purchaser's Financing Facility including transferring title in the Yacht to the Purchaser's Financing Facility but taking thereby into account the reasonable security interest of the Builder in the Yacht and the Builder's rights under this Contract as set forth more fully herein and any such co-operation shall not affect the Builder's rights under this Contract.

**9.2 Purchaser Supplied Items**

All rights and title in and to the Purchaser Supplied Items shall not pass to the Builder.

**9.3 IP-Rights**

(a) All intellectual property rights in the overall design of the Yacht as well as copyright in the General Arrangement Plan, the Specifications and all Drawings, technical descriptions, calculations, test results and other information and data relating to the construction and design of the Yacht shall at all times remain vested in the Builder.

(b) All intellectual property rights in the Interior and Exterior Design Drawings shall at all times remain vested in the Purchaser or the Exterior or Interior Designer, respectively.

(c) The General Arrangement Plan, the Specifications and all Drawings, technical descriptions, calculations, test results and other information and data relating to the design or construction of the Yacht provided by the Builder to the Purchaser shall be kept confidential by the Purchaser, provided that the Purchaser may disclose the same as reasonably required for the purpose of the operation, repair, or re-sale of the Yacht or if disclosure is required for the purpose of any arbitration or legal proceeding concerning the Yacht.

## 10. RISK AND INSURANCE

### 10.1 Risk during Construction

During construction and until delivery and acceptance by the Purchaser as evidenced by a signed Protocol of Delivery and Acceptance by the Purchaser and the Builder, the Yacht and/or such parts as have been constructed and all materials, engines, machinery, outfit and equipment pertaining to this Contract (including the Purchaser Supplied Items to the extent delivered to the Builder, but subject to the limit as per Sub-Clause 10.2 below) shall be at the Builder's sole risk.

### 10.2 Scope of Insurance

The Yacht and/or all of the Yacht's parts, materials, engines, machinery, outfit and equipment, etc., inclusive of Purchaser Supplied Items, as aforesaid, shall immediately be marked with the Yacht's hull number and shall, (save for items of fine art), until delivery of the Yacht to the Purchaser, as evidenced by a fully executed Protocol of Delivery and Acceptance, be insured by the Builder at the Builder's expense with first class underwriters. Builder's policies shall be in the joint names and for the respective interests of the Builder and the Purchaser, with the Purchaser named as loss payee as Purchaser's interest may appear, and more specifically described in Sub-Clause 10.4, Builder shall insure the Yacht against all risks (including risks associated with the conduct of trials) customarily insured against in the shipbuilding industry and in accordance with and subject to the terms of the Builder's usual construction policy with a deductible, payable by Builder, of not more than 100,000.00 Euros. The sum of the insurance shall be at least 100% of the amount of all installments of the Contract Price and any additional sums as required under the terms of this Contract, for the time being paid by the Purchaser. The insurance sum shall include an amount of ten (10) percent of the Contract Price for Purchaser Supplied Items and Interior Outfit.

If the Purchaser so requests, the Builder shall, at the Purchaser's cost, procure

additional insurance on the Purchaser Supplied Items and Interior Outfit where such Purchaser Supplied Items or Interior Outfit are items of fine art, or where the accumulated insurance value of Purchaser Supplied Items and Interior Outfit exceeds ten (10) percent of the Contract Price. Prior to its procurement by the Builder, the cost of such additional insurance shall be agreed in writing by the Builder and Purchaser and shall be reimbursed to the Builder upon delivery of the Yacht.

**10.3 Partial Loss**

(a) If the Yacht and/or such parts, materials, etc as aforesaid sustains damage, not constituting an actual, constructive, arranged or compromised total loss before delivery, then any moneys payable under the above mentioned insurances in respect of such damage shall be applied by the Builder with all due dispatch and without any additional cost to the Purchaser in making good such damage to the satisfaction of the Classification Society and the Flag State and so as to ensure that the Yacht complies with the requirements of this Contract, the General Arrangement Plan and the Specification.

(b) Underwriters shall be entitled to settle claims concerning reparable damage to the Yacht directly with the Builder and to make all payments on such claims directly to the Builder.

**10.4 Total Loss**

If the Yacht from any cause becomes, or is deemed to be by the underwriters, at any time before delivery, an actual, constructive, arranged or compromised total loss then the Purchaser shall be entitled to terminate this Contract and the provisions of Sub-Clause 12.2 shall apply.

### 10.5 Repair and Reconstruction of Yacht

If the Builder repairs any damage, replaces a part or reconstructs the Yacht as contemplated by this Clause 10, the Scheduled Delivery Date shall be extended by a period of time agreed between the Builder and Purchaser which is reasonably necessary to carry out such works. If the Builder and Purchaser fail to agree on the amount of time reasonably necessary to carry out such works, the matter shall be referred to the technical expert for determination in accordance with Sub-Clause 16.2(a).

## 11. WARRANTY

### 11.1 Extent of Warranty

(a) The Builder shall remedy by repairing to as new standard or if necessary replacing

(i) all defects in the Yacht or her engines, machinery, equipment or in the Yacht's freeboard or superstructure exterior coatings (including but not limited to blistering, yellowing or other discoloration or fading of the finish) which become apparent during the period of twelve (12) months plus five (5) Business Days after delivery of the Yacht to Purchaser as evidenced by a fully executed Protocol of Delivery and Acceptance, (in the case of gloss coatings as defined in the Specifications);

(ii) all defects in the Yacht's underwater coatings which become apparent during the period of twelve (12) months plus five (5) Business Days after delivery of the Yacht to Purchaser as evidenced by a fully executed Protocol of Delivery and Acceptance, and which result in rusting greater than RE2 on the European Scale of Rusting for Anticorrosive Paints; and

GJMM

(iii) all defects in the Yacht's tank coatings (ballast tanks, fresh water tank and grey water tank coatings) which become apparent during the period of twelve (12) months plus five (5) Business Days after delivery of the Yacht to Purchaser as evidenced by a fully executed Protocol of Delivery and Acceptance, and which result in rusting greater than RE2 on the European Scale of Rusting for Anticorrosive Paints;

(iv) all defects in the Yacht's hull and superstructure, including structural defects, failure and osmosis, during the period of Twenty Four (24) months plus five (5) Business Days after delivery of the Yacht to Purchaser as evidenced by a fully executed Protocol of Delivery and Acceptance;

**provided that** in each case written notice of such defect is given to the Builder within ten (10) Business Days after discovery.

(b) The foregoing warranty shall apply only to the work of the Builder, Builder's employees, and of its sub-contractors and suppliers. The Builder's liability shall be limited to the above mentioned obligations as to extent and duration. The Builder and/or its subcontractors and suppliers shall have no liability whatsoever for any consequential loss, damages or expense in any way deriving from or connected with the above defects or from any remedial action taken, or for defects due to normal wear and tear, overloading, accidents, fire, improper loading or stowage of the Yacht.

(c) Where reasonably convenient for the Yacht to proceed to Builder's Premises, the foregoing repairs or replacements shall be carried out at the Builder's Premises. But if the Purchaser considers that the replacement or repair of any defect under this Clause cannot be conveniently carried out at the Builder's Premises, then the Purchaser may have such repair or replacement carried out elsewhere in which

case the Builder shall reimburse the Purchaser the documented expenses incurred by it provided that:

(i) before having any such repair or replacement carried out elsewhere the Purchaser shall obtain Builder's written approval as to use of such shipyard, which written approval shall not be unreasonably withheld;

(ii) such reimbursement shall not exceed the estimated cost of carrying out the repair or replacement in question at the Builder's shipyard;

(iii) if technically feasible the repair and replacement shall be carried out by personnel of the Builder in which case Purchaser shall reimburse to the Builder travel expenses per trip and person not to exceed 2,500.00 euros.

(d) The Builder at its own cost, but with time being of the essence, shall have the right to investigate the validity of the Purchaser's claim by the attendance aboard the Yacht of accredited representatives. The Builder shall promptly, and in no event exceeding ten (10) calendar days following notification of the Yacht's scheduled arrival at the Builder's Premises or other agreed shipyard for repairs, notify Purchaser of Builder's acceptance or rejection of Purchaser's warranty claim for repair or replacement. Warranty claims for repairs or replacements rejected by Builder shall be referred to determination in accordance with Clause 16.

(e) Parts of machinery, outfit or equipment which have been replaced under this warranty shall (if the Builder so requires) be returned by sea freight as soon as possible to the Builder's shipyard at the Builder's cost and will become the property of the Builder, save in respect where by force of law the Purchaser is required to deliver any machinery, outfit or equipment which have been replaced to a third party.

(f) The Builder shall warrant any repairs or replacements completed in

accordance with Sub-Clause 11.1 for an additional period of twelve months. For the avoidance of doubt, in no case shall the additional warranty period extend for more than 12 months over the original warranty period.

**11.2 Warranty Engineer**

(a) At any time during the warranty period the Builder shall have the option at its own risk and expense, and upon agreement of Purchaser, to place on board the Yacht a warranty engineer who shall act as the Builder's observer, and at all times remain the Builder's employee or agent.

(b) The Purchaser shall ensure that the warranty engineer receives all reasonable assistance for the fulfillment of his tasks. For the avoidance of doubt, the warranty engineer shall be subject to the command of the Yacht's captain. The Purchaser shall provide accommodation and subsistence to the warranty engineer at no cost to the Builder and the warranty engineer's remuneration and other expenses shall be for the Builder's account.

**11.3 Builder's Responsibility**

The Builder shall not be liable for any defects other than those set out in this Clause and the Builder's responsibility and liability shall be limited to the obligations set out in this Clause. The Builder and/or the Builder's subcontractors and suppliers shall have no responsibility or liability for whatsoever or howsoever arising (whether in contract, tort or otherwise) for any consequential or special loss, damages or expenses in any way deriving from or connected with the above defects or that in any way derive from or are connected with any remedial action or for defects due to normal wear and tear, overloading, accidents, fire, improper loading or stowage of the Yacht.

## 12. BUILDER'S DEFAULT

### 12.1 Termination Events

In addition to such other rights as Purchaser may have to terminate this Contract under the express provisions of this Contract the Purchaser shall be entitled to terminate this Contract by notice in writing to the Builder:

(a) if a petition is granted or an order is made or an effective resolution is passed for the winding up, liquidation or dissolution of the Builder otherwise than for the purpose of an amalgamation or corporate reorganization;

(b) if a receiver, receiver and manager or administrator is appointed of the whole or a substantial part of the undertaking or property of the Builder;

(c) if the Builder suspends payment of its debts or ceases to carry on its business or makes any arrangement or composition with its creditors;

(d) if the Builder fails to deliver the Yacht to Purchaser in accordance with Clause 7.

### 12.2 Consequences of Termination as a Result of Builder's Default

(a) Subject to the following provisions of this Sub-Clause upon any termination of this Contract by the Purchaser the Builder shall be liable:

(i) to repay to the Purchaser the amount of all installments of the Contract Price paid by the Purchaser plus interest thereon at the Base Rate per annum from the date when such installments were paid;

(ii) to return all the Purchaser Supplied Items delivered to Builder to the Purchaser ;and

(iii) if and to the extent that the Purchaser Supplied Items cannot be returned to the Purchaser in the same condition in which they were

delivered to the Builder, to pay to the Purchaser the proven acquisition cost thereof, plus interest at the Base Rate per annum from the date of acquisition.

(b) As an alternative to its rights under the preceding provisions of this Sub-Clause the Purchaser shall be entitled by notice in writing given at any time within ten (10) Business Days after termination of this Contract to elect to take over and complete the Yacht elsewhere whereupon the Builder shall be liable:

(i) to promptly deliver the Yacht and/or such parts as have been constructed and all materials, engines, machinery, outfit and equipment pertaining to this Contract (including the Purchaser Supplied Items) and to transfer title in the Yacht to the Purchaser for removal from the Builder's Premises);

(ii) to assign to the Purchaser or as it may direct the benefit of any or all agreements for the supply of materials, engines, machinery, outfit or equipment or the execution of work in relation to this Contract; and

(iii) without prejudice to the Builder's right to retain any installments paid by the Purchaser on the Contract Price, to pay to the Purchaser the difference between the total amount paid by Purchaser to construct the Yacht in accordance with the General Arrangement Plan and the Specification and the Contract Price.

## 13. PURCHASER'S DEFAULT

### 13.1 Default Interest

(a) If the Purchaser defaults in the payment of any installment of the Contract Price or other amount due to the Builder under the terms of this Contract on the due date therefore, the Builder shall be entitled to charge



GTAM

interest on such amount at the Base Rate from the date of default until the date of payment.

(b) If the Purchaser is in default of the payment of any installment of the Contract Price for more than five (5) Business Days after the due date therefore, the Builder shall be entitled to postpone the Scheduled Delivery Date by the number of additional Business Days' delay in the payment of such amount above five (5) Business Days.

**13.2 Termination Events**

If the Purchaser fails to pay any installment of the Contract Price in part or in full within thirty-five (35) Business Days after the due date therefore, then at any time thereafter the Builder shall be entitled to terminate this Contract by giving notice by fax or registered letter to the Purchaser to that effect whereupon this Contract shall terminate.

**13.3 Consequences of Termination as a Result of Purchaser's Default**

Upon termination of this Contract by the Builder as aforesaid the Builder shall either sell the Yacht and her equipment (excluding the Purchaser Supplied Items) in the condition in which the same are at the time of the termination of this Contract or complete the Yacht and sell the Yacht after completion. Any such sale shall be at arms length and properly marketed to achieve the best possible price.

**13.4 Ascertainment of Damages in Case of Purchaser's Default**

Following any sale of the Yacht there shall be ascertained:

(a) first, the amount of the net proceeds of such sale, ("the Builder's Cash Receipts"); and

(b) secondly, the sum of all reasonable costs and expenses the Builder incurred in connection with the performance of this Contract, all

documented and reasonable costs of the sale of the Yacht, all charges, funding costs, expenses, direct losses, damages or incidental liabilities including (but without prejudice to the generality of the foregoing) and taking into account the consequences of the cancellation of sub-contracts by the Builder as a result of any default by the Purchaser (the "Builder's Damages").

No other damages shall be payable or due to the Builder.

### 13.5 Compensation

If the sum of the installments of the Contract Price plus any other sums paid by Purchaser to Builder under the terms of this Contract and the Builder's Cash Receipts should exceed the Builder's Damages, then Builder shall forthwith pay the difference to the Purchaser. If the sum of the installments of the Contract Price plus any other sums paid by Purchaser to Builder under the terms of this Contract received by the Builder and the Builder's Cash Receipts are less than the Builder's Damages, the Purchaser shall forthwith pay the difference to the Builder.

### 13.6 Additional Cost Caused to Builder

Should the Purchaser fail to act in compliance with the Action List, the Design Drawings Schedule and the Builder's Construction Schedule, specifically should the Purchaser fail to act timely in compliance with those Schedules, and should such failure cause additional out of pocket costs to the Builder (actual cost spent by Builder) the Purchaser shall reimburse such additional out of pocket costs to the Builder upon the Builder having duly proved and documented such cost to the Purchaser.

## 14. TAXES

**14.1 The Purchaser warrants to the Builder that:**

(a) the Purchaser will advise the Builder at least three (3) weeks before the Scheduled Delivery Date of the Yacht's first port of call after delivery, which shall be in a country that is not a member of the European Union, so that the final invoice and export declaration and other necessary documentation can refer to that port;

(b) the Purchaser will accept delivery of the Yacht under this Contract offshore and will cooperate with the Builder to meet necessary custom's formalities and exportation requirements of Germany for the export of the Yacht;

(c) the Purchaser will execute, as necessary, any export documents that are required by Germany and that the Builder presents to Purchaser for execution so as to ensure that the delivery of the Yacht will be zero-rated under the provisions of German Value Added Tax ("VAT"); and

(d) in the event that the Purchaser takes any action as a result of which VAT is assessed against Builder and Builder is obligated to pay VAT in respect of the Yacht, the Purchaser agrees to reimburse Builder for the VAT paid, plus any interest and penalties imposed on the Builder by German tax authorities.

**14.2 The Builder warrants to the Purchaser that:**

(a) the Builder will tender delivery of the Yacht under this Contract offshore with a final invoice, export declaration and all other documentation required by Germany so that the Yacht can be exported to a country outside the European Union on a VAT free basis;

(b) the Builder will fulfill all necessary custom's formalities and meet all of

the exportation requirements of Germany with respect to the export of the Yacht to a country outside the European Union, so that the delivery of the Yacht to the Purchaser will be zero-rated under the provisions of the VAT;

(c) the Builder will present to Purchaser all other documentation and will take all of the actions which are required in order for the Yacht to be exported from Germany without VAT being incurred by either Builder or Purchaser; and

(d) No VAT or any similar German tax will be due on delivery or by reason of sale and supply of the Yacht to the Purchaser, provided that the Purchaser fully complies with the provisions of Clause 14.1.

**14.3**

~~If the laws and/or the regulations of Germany are altered or changed before the~~ acceptance and delivery of the Yacht as a consequence of which a VAT or any similar sales tax, or related penalties or interest, will be due on delivery or by reason of sale and supply of the Yacht to the Purchaser notwithstanding the Purchaser's compliance with its obligations under Clause 14.1, the Purchaser shall reimburse such VAT or similar sales tax, and related penalties or interest, to the Builder. However, if the Builder becomes aware that any laws are to be altered or changed as a consequence of which a VAT or any similar sales tax might be due, the Builder will forthwith inform the Purchaser in writing of any such alteration or change, and the Builder shall co-operate and, if necessary, agree on such amendments to this Contract as the Purchaser may reasonably require, in order to avoid the VAT or any similar sales tax from ~~becoming due.~~

Deleted

C/am

**15. PATENTS**

C/am

### 15.1 Patent Infringements

The Builder shall indemnify and hold harmless the Purchaser against any and all costs associated with any infringement of patent rights in connection with the construction of the Yacht, including all costs and attorney fees incurred by Purchaser as a result of patent infringement, but no such liability shall lie with the Builder with regard to the Purchaser Supplied Items, the Interior Outfit or the interior or exterior design of the Yacht, the General Arrangement Plan and the Specifications to the extent the infringing patent was provided by the Purchaser.

### 15.2 Notice of Patent Infringement

The Purchaser shall promptly notify the Builder in writing of any notice received or of the institution of any proceedings against the Purchaser charging or alleging patent infringement in respect of parts and equipment furnished by the Builder, and the Builder shall, at its option take over the defense of such suit or the handling of such charge to seek to procure on behalf of the Purchaser the right to continue using such patent infringing product.

## 16. LAW AND ARBITRATION

### 16.1 Law of Contract

This Contract shall be governed by and construed in accordance with the law of Switzerland, but ownership to the Yacht and the Builder's lien rights shall be governed by and construed in accordance with German law.

### 16.2 Reference to Expert or Arbitration

If any dispute or difference may arise or claim be made by and between the parties hereto out of or in relation to or in connection with this Contract which cannot be resolved by the parties themselves, it shall be settled as follows:

(a) Technical disputes (being disputes, differences or claims regarding any technical matter arising out of, or relating to or in connection with the construction of the Yacht or being expressly stated in accordance with this Contract to be referred to the technical expert for resolution) shall at the written request of either party be referred to a mutually acceptable technical expert who shall act as such (and not as an arbitrator) and whose opinion on the matter shall be final and binding upon the parties. If the parties shall fail to agree upon the identity of a mutually acceptable technical expert as aforesaid within thirty (30) days after receipt of the written request mentioned above, such technical expert shall be nominated by the President for the time being of the Royal Institute of Naval Architects, London.

(b) All other disputes arising out of or in connection with this Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules. The place of the arbitration shall be London, England. The language of the arbitration shall be English.

(c) In the event of reference to the expert or to arbitration of any dispute or disputes arising or occurring prior to delivery of the Yacht to Purchaser, as evidenced by a fully executed Protocol of Delivery and Acceptance, the award by the party deciding the said dispute or disputes shall include a declaration as to any postponement of the Scheduled Delivery Date which the party deciding the dispute or disputes may in his/their absolute discretion deem appropriate, and a declaration as to the apportionment of costs and expenses incurred as a result of such reference to the expert or to arbitration which the party deciding the disputes or disputes may in his/their absolute discretion deems appropriate.

### 16.3 Continuation of Construction

Except as expressly provided elsewhere in this Contract or with the written agreement of the Purchaser, Builder shall not be entitled to suspend or delay construction of the Yacht by reason of any dispute between the parties or the submission of any such dispute to a technical expert or arbitration; **provided that** Purchaser continues to make all installment payments according to the payment schedule.

## 17. LIMITATIONS UPON LIABILITY

### 17.1 Exclusion of further Liability

Except as expressly provided in this Contract the parties shall have no other obligation or liability for damages and/or losses, whether direct, indirect or consequential whatsoever or howsoever arising in connection with this Contract and there shall be no other representation, guarantee, warranty, term or condition express or implied by law (statutory or otherwise).

### 17.2 Employees

Every exclusion and limitation contained in this Contract applicable to either party hereto or to which either party hereto is entitled under this Contract shall also be available and shall extend to protect the employees and agents of such party in respect of acts or omissions in the course of their employment or service.

## 18. GENERAL PROVISIONS

### 18.1 Notices

Any notices to be given under this Contract must be given in writing, by hand-delivery, facsimile, or e-mail in the English language as follows:

(a) to the Builder:

**On commercial matters:**
Peter Güldensupp, Managing Director
Kieler Str. 53, 24768 Rendsburg
Tel: 00 49 43 31/2 07-2 21; Fax: 00 49 43 31/2 07-1 17
E-mail: gueldensupp@nobiskrug.com

**On technical matters:**
Jan Ehlers, Technical Director
Kieler Str. 53, 24768 Rendsburg
Tel: 00 49 43 31/2 07-2 21; Fax: 00 49 43 31/2 07-1 17
E-mail: ehlers@nobiskrug.com

(b) to the Purchaser:

to be advised

**On Legal Matters:**
Moore & Company, P.A.
355 Alhambra Circle, Suite 1100
Miami (Coral Gables), FL 33134
Ph: 786 221 0600
Fx: 786 221 0601
E-mail: michael@moore-and-co.net

**On Commercial Matters**

Mr. John A. Morgan
767 5th Ave., Suite 802
New York, NY 10153
Ph: (212) 593 3700
Fx: (212) 593 3706
E-mail: souwester@aol.com

Any notice shall be deemed received on the date of hand-delivery and on the first (1st) Business Day after sending in the case of facsimile or e-mail.

**18.2 Assignment**

(a) The Builder shall not purport to assign, transfer or in any way encumber the benefit of this Contract or any part thereof without the prior written consent of the Purchaser and (notwithstanding the giving of consent by the Purchaser) no such assignment, transfer or encumbrance shall relieve the Builder of responsibility for its obligations as set out in this Contract.

(b) The Purchaser shall not purport to assign, transfer or in any way encumber the benefit of this Contract or any part thereof without the prior written consent of the Builder (such consent not to be unreasonably withheld or delayed); **provided that** the benefit of this Contract shall be freely assignable (without the need for the Builder's consent) by way of security for any obligations incurred by the Purchaser in relation to the financing of the Contract Price, and/or to any corporate entity owned by the Purchaser or the beneficial owner of the Purchaser.

**18.3 Number of Originals and Entire Agreement**

This Contract is made out and signed in two original copies, of which the Purchaser

retains one and the Builder one. This Contract, including all Schedules, Exhibits, Amendments, and Addendums, the General Arrangement Plan, and the Specifications constitute the entire agreement between the parties concerning the subject matter hereof and shall supersede all previous written and oral communications between the parties concerning the subject matter of this Contract and govern their relationship in every contingency. No variation of the terms of this Contract shall be effective unless in writing signed by Builder and Purchaser or their duly Authorized Representatives.

**AS WITNESSED,** the parties have executed this Contract the day and year first above mentioned.

SIGNED for and on behalf of Nobiskrug GmbH (Builder)

By: ______________________ and ______________________

As its: Managing Director     Sales Director

in the presence of: ______________________

SIGNED for and on behalf of CHMM, LLC (Purchaser)

By: ______________________

As Its: Managing Member

in the presence of: ______________________